Department of Employment Security
No. 2012-363

## APPEAL OF WILLIAM STEWART
(New Hampshire Department of Employment Security)

Submitted: February 13, 2013
Opinion Issued: April 25, 2013

William Stewart, self-represented party, on the brief.

*Michael A. Delaney*, attorney general (*Patrick J. Queenan*, attorney, on the brief), for the New Hampshire Department of Employment Security.

LYNN, J. The claimant, William Stewart, appeals a decision of the appeal tribunal (tribunal), as affirmed by the appellate board, of the New Hampshire Department of Employment Security (DES) denying his application for unemployment benefits. We vacate and remand.

The record supports the following facts. Stewart worked as the code enforcement director for the City of Laconia from March 14 to June 29, 2011. Following his termination, Stewart applied for unemployment benefits. A DES certifying officer denied the application. The officer determined that Stewart did not have annual earnings of at least $1,400 in two of four quarters of his alternate base period. *See* RSA 282-A:2, :25 (2010).[1]

Stewart appealed the decision to the tribunal. He argued that he had earnings of at least $1,400 in both the third and fourth quarters of his alternate base period. Following a hearing, the tribunal affirmed the decision denying Stewart's claim. The tribunal found that Stewart had insufficient quarterly earnings under RSA 282-A:25 to establish a claim for unemployment benefits because the employer-reported gross wages paid to him in the third quarter of his alternate base period were only $1,057.70, while he earned $16,605.90 in the fourth quarter.[2] In its written decision, the tribunal rejected Stewart's argument that a paycheck dated April 1,

---

[1] RSA 282-A:2, I, defines "base period" as "the first 4 of the last 5 completed calendar quarters immediately preceding the individual's benefit year." With an exception not pertinent here, *see* RSA 282-A:2, I, "benefit year" with respect to any individual "means the one-year period beginning with the first day of the week in which an individual files an initial claim for benefits and meets the earnings requirements of RSA 282-A:25." RSA 282-A:4. For an individual who has not earned at least $1,400 in two quarters of the base period, the statute provides for an "alternate base period" of "the last 4 completed calendar quarters immediately preceeding the first day of the individual's benefit year." RSA 282-A:2, II.

[2] The tribunal's decision states that Stewart had "insufficient quarterly earnings in the base period to establish a claim for unemployment benefits." However, the decision makes clear that the tribunal was referring to Stewart's alternate base period earnings.

2011 — for work he performed from March 21 to March 27, 2011 — should be considered part of his third-quarter earnings.[3] The last day of the third quarter of Stewart's alternate base period was March 31, 2011. The tribunal relied on our decision in *Appeal of Tennis*, 149 N.H. 91 (2003), for the proposition that earnings under RSA 282-A:25 are determined on the date of receipt. After exhausting his administrative remedies, Stewart filed this appeal.

Our review of DES decisions is governed by RSA 282-A:67, V (2010):

> The court shall not substitute its judgment for that of the appeal tribunal as to the weight of the evidence on questions of fact. The court shall reverse or modify the decision of the appeal tribunal, or remand the case for further proceedings, as determined by the court, only if the substantial rights of the appellant had been prejudiced because the administrative findings, inferences, or conclusions are:
>
> > (a) In violation of constitutional or statutory provisions;
> >
> > (b) In excess of statutory authority;
> >
> > (c) Made upon unlawful procedures;
> >
> > (d) Clearly erroneous in view of the substantial evidence on the whole record; or
> >
> > (e) Affected by other error of law.

Otherwise, the court shall affirm the appeal tribunal's decision. *See Appeal of Moore*, 164 N.H. 102, 103-04 (2012).

On appeal, Stewart raises a number of constitutional and statutory claims. Because we decide cases on constitutional grounds only when necessary, we first address his statutory claims. *See State v. Wamala*, 158 N.H. 583, 592 (2009).

Stewart argues that the tribunal erred in concluding that he had insufficient quarterly earnings under RSA 282-A:25 to establish a claim for unemployment benefits. He asserts that " 'earned' under the New Hampshire unemployment statutes happens when services or labor are per-

---

[3] Three of Stewart's pay stubs show that he had earnings of $1,057.70 for each of the following pay periods: March 14 to March 20; March 21 to March 27; and March 28 to April 3. The pay stubs also show that his pay checks for these periods were dated March 25, April 1, and April 8.

formed, not when payment is received." DES counters that *Appeal of Tennis* "held that the date of receipt is the proper method for determining earnings under RSA 282-A:25 and [DES] is not authorized 'to exercise discretion' to determine otherwise."

Resolution of this issue requires that we interpret RSA 282-A:25.

> Statutory interpretation is a question of law that we review *de novo*. We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Unless we find that the statutory language is ambiguous, we need not look to legislative intent. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation.

*Bond v. Martineau*, 164 N.H. 210, 213-14 (2012) (citations omitted).

■ To obtain unemployment benefits, RSA 282-A:25 requires that an individual have "annual earnings, of which in each of the 2 calendar quarters [within the base period or alternate base period] the individual must have earned not less than $1,400." The definition of "[a]nnual earnings" is "the wages . . . earned during each base period from an employer by an individual in employment in New Hampshire." RSA 282-A:16 (2010). " 'Wages' means every form of remuneration for personal services paid *or payable* to a person directly or indirectly by his employing unit, including salaries . . . ." RSA 282-A:15, I (2010) (emphasis added). "Paid" means "receiving pay" or "marked by the reception of pay." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1620 (unabridged ed. 2002). "Payable" means "capable of being paid" or "requiring to be paid." *Id.* at 1659. "Earn" means "to come to be duly worthy of or entitled to as remuneration for work or services," *e.g.*, "he has [earned] his promotion, but we cannot give it to him now." *Id.* at 714.

■ The plain language of these sections, when read together, demonstrates that wages that are paid or payable constitute earnings under RSA 282-A:25. Thus, an applicant has earnings under the statute when the applicant receives wages *or* performs services that entitle him or her to wages. Of course, in cases where an applicant performs services in one quarter and receives wages for such services in a different quarter, those wages may not be considered in calculating the applicant's earnings in both quarters.

DES's reliance on our decision in *Appeal of Tennis* was misplaced. In that case, we concluded that the date of receipt was the proper method for

determining when an applicant earned severance payments in calculating the applicant's unemployment benefits under RSA 282-A:25. *See Appeal of Tennis*, 149 N.H. at 94. We reversed DES's determination that, because the applicant received the severance payments in a quarter in which he performed no services for his employer, he had not "earned" the payments in that quarter within the meaning of RSA 282-A:25. *Id.* at 92-93. We offered two reasons in support of our decision. First, neither RSA 282-A:25 nor RSA 282-A:16 "contain[s] language that limits earnings to income received in the same quarter in which the employee performs services." *Id.* at 94. Second, we noted that because RSA 282-A:14, III provides that "[w]ages or earnings or both shall be deemed to have been received for such week or weeks as the commissioner may find can be reasonably said to apply," the absence of similar language in RSA 282-A:25 indicates that "the legislature did not intend to authorize DES to exercise similar discretion in determining earnings for RSA 282-A:25 purposes." *Id.* at 94.

■ ■ Although we acknowledge having used language that, with the benefit of hindsight, appears broader than was necessary, *Appeal of Tennis* does not stand for the proposition that, in *all* circumstances, "the date of receipt is the proper method for determining earnings under RSA 282-A:25 and [DES] is not authorized 'to exercise discretion' to determine otherwise." Read in isolation, our statement that "the date of services performed cannot be the touchstone for determining earnings under the statute" supports DES's interpretation of the case. *Id.* In the very next sentence, however, we clarified that "the date of receipt, the determination of which does not involve discretion, is the proper method for determining earnings under RSA 282-A:25 *in this case.*" *Id.* (emphasis added). Thus, we simply concluded that the date of receipt is the proper method for determining earnings under RSA 282-A:25 where discretion would be necessary to determine when an applicant performed services to merit pay. *Id.* Here, it is undisputed that Stewart's paycheck dated April 1 was for work he performed from March 21 to March 27, 2011. Thus, because he received the paycheck for services that he performed in the third quarter of his alternate base period, DES should have considered the amount of that check as part of his third-quarter earnings.

In a footnote, DES argues that, "[g]iven its consistent application of [RSA 282-A:25] . . . the doctrine of administrative gloss also supports [its] decision in this case." We disagree. "The doctrine of administrative gloss is a rule of statutory construction. Administrative gloss is placed upon an ambiguous clause when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference." *Petition*

*of Kalar*, 162 N.H. 314, 321 (2011) (citation and quotation omitted). Here, DES has not argued that any clause of RSA 282-A:25 is ambiguous.

Finally, we reject DES's argument that our decision today "is inconsistent with the policy considerations behind the statute" and will "lead to inconsistencies not supported by the statutory language or purpose." Quoting from *Appeal of Tennis*, DES asserts that the "purpose of RSA 282-A:25 . . . is to limit [unemployment] benefits to applicants regularly attached to the labor market." *Appeal of Tennis*, 149 N.H. at 95 (quotation omitted). First, in *Appeal of Tennis* we did not determine the policy underlying the statute. Instead, we simply recited the statutory purpose as alleged by DES, and assumed its correctness in deciding the case. *Id.* ("Assuming that these policy rationales underlie the current unemployment benefit statutes . . . ."). Second, DES has not identified any "inconsistencies not supported by the statutory language or purpose." Even assuming that the purpose of RSA 282-A:25 is to limit unemployment benefits to applicants regularly attached to the labor market, we fail to see how our reading of the statute is at odds with this purpose, or the broader purpose of RSA chapter 282-A — "to prevent the spread of unemployment and to lighten the burden on those workers who are involuntarily unemployed through no fault of their own." *Appeal of Aspen Contracting NE*, 164 N.H. 88, 90 (2012) (quotation omitted).[4]

Given our interpretation of RSA 282-A:25, we need not reach Stewart's remaining statutory and constitutional claims. *See State v. Flodin*, 159 N.H. 358, 366 (2009). Because DES denied Stewart's claim for unemployment benefits based on an erroneous interpretation of RSA 282-A:25, we vacate and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.

---

[4] We note that DES's interpretation of *Appeal of Tennis* as requiring DES to consider only the date of receipt of wages for purposes of RSA 282-A:25 could lead to absurd and unjust results. For example, an employee who dutifully performed services for his employer but never received wages would be deemed to have no earnings under RSA 282-A:25. Such a result is absurd and unjust and cannot have been intended by the legislature. *See Appeal of Gallant*, 125 N.H. 832, 835 (1984) (we will not interpret RSA chapter 282-A in a manner that would deny unemployment benefits to a faultless claimant); *Gray v. Kelly*, 161 N.H. 160, 166 (2010) (we construe statutes to avoid absurd or unjust results).